# EXHIBIT B

# ASSIGNMENT AGREEMENT

This ASSIGNMENT AGREEMENT ("Agreement") is entered into as of January 1, 2010, between **NEW LINE PRODUCTIONS, INC.**, a California corporation ("Assignor"), and **WARNER BROS. ENTERTAINMENT INC.**, a Delaware corporation ("Assignee").

The parties hereby agree as follows:

## I. DEFINITIONS

1.1. "IP Rights" shall mean any and all copyrights, trademarks and related or similar rights and interests, and all grants, licenses, security interests, priorities and privileges relating to any works of authorship or any other subject matter protected by such rights, under the laws of every country and jurisdiction throughout the world, now or hereafter known, whether registered or unregistered, for their entire term of protection, including all extensions, renewals, restorations and reversions thereof.

1.2 "Content" shall mean all works of authorship and products commonly understood as content in the entertainment, media, music and publishing industries, **acquired by Assignor on or after the date hereof**, including products such as programming content, motion pictures, television programs and other audiovisual works, advertising and promotional materials, photographs, illustrations, images and other pictorial, graphic and sculptural works, dramatic works, choreographic works, sound recordings, musical compositions, books, articles and other publications, characters, animation, cartoons, video games, scripts, storyboards, titles, screenplays, synopses, plots, dialogue, stories, themes, treatments, in any media, whether digital or otherwise, and any ideas, concepts or information contained therein, and any materials used in the preparation, development, promotion or advertising thereof and

merchandise related thereto, in each case, whether or not protectable by copyright, trademark or similar laws. The list of items included in the above definition of Content is intended by way of example only and is not to be construed in any manner as an exhaustive or complete list of items covered by the definition of Content.

 1.3 "Content Agreements" shall mean all agreements containing provisions that license, permit or enable Assignor to exploit or use Content, or that otherwise grant Assignor rights, including IP Rights, in Content but not including so–called option agreements unless and until the options contained therein have been exercised.

 1.4. "Physical Materials" shall mean all copies, phonorecords and other physical materials in any medium in which any Content is embodied, **ownership of which is acquired by Assignor on or after the date hereof.**

## II. ASSIGNMENT AND RIGHTS

 2.1. For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor hereby irrevocably and forever assigns, conveys and transfers to Assignee all of its right, title and interest throughout the world in and to: (A) all Content including IP Rights therein, at all stages of development, production and completion of such Content; and (B) all Physical Materials.

 2.2. Without limiting the generality and in furtherance of the foregoing assignment, Assignor also hereby irrevocably and forever assigns, conveys and transfers to Assignee the benefit of all grants of rights, and of all representations, warranties, indemnities, and powers of attorney relating to such grants, obtained by Assignor in Content Agreements on or after the date hereof. The purpose of the assignment in this paragraph is solely to vest in Assignee the benefits of the specific rights-related provisions of Content Agreements described above, in

furtherance of the assignment made in paragraph 2.1 above. Assignee assumes no obligations under such Content Agreements.

2.3. If any Content assigned hereunder is the subject of and necessary for the continuing development and production by Assignor of such Content, or of further Content based thereon, Assignee licenses to Assignor all rights necessary for the completion of such development and production. By way of example, if a screenplay has been assigned by Assignor to Assignee under paragraphs 2.1 and 2.2 above, and if Assignor is engaging in the further development of that screenplay, or in the production of a motion picture based thereon, then Assignor shall be deemed to have been granted a license to use the screenplay for those purposes, all subject to the continuing assignment hereunder to Assignee of all newly created Content and Physical Materials.

### III. FURTHER ASSURANCES; POWERS OF EXECUTION

3.1 Assignor agrees, and shall cause all persons (whether employees, independent contractors or otherwise) working for, with or under it, to, upon request, at any time without charge to Assignee, sign all papers, take all rightful oaths, and do all acts which may be necessary, desirable or convenient (as determined in Assignee's sole discretion) for vesting or evidencing the vesting of title to the Content and the Physical Materials in Assignee, its successors, assigns and legal representatives or nominees, including but not limited to, any acts which may be necessary, desirable or convenient for claiming said rights and for securing and maintaining copyrights and trademarks in the Content. Assignor hereby appoints, and shall cause all persons (whether employees, independent contractors or otherwise) working for, with or under it to appoint, Assignee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-of-fact with full irrevocable power and authority in

place and stead of Assignor and in the name of Assignor or in its own name, for the purposes of carrying out the terms of this Agreement, to take any and all appropriate actions and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.

  3.2. Furthermore, Assignor agrees that upon request it will, at any time without charge to Assignee, cooperate fully with Assignee in the enforcement of Assignor's and/or Assignee's rights, including but not limited to cooperating fully with Assignee in connection with any claims or suits brought by or against Assignee relating to the Content and Content Agreements. Without limiting the foregoing, Assignor hereby irrevocably appoints Assignee as its attorney-in-fact, this appointment being a power coupled with an interest, to execute on behalf of Assignor any and all documents, including pleadings and other court or administrative filings, deemed necessary or appropriate by Assignee in connection with the protection and enforcement of Assignor's and/or Assignee's rights in the Content and Content Agreements, including but not limited to initiating legal proceedings against third parties in the name of Assignor at Assignee's expense.

## IV. REPRESENTATIONS AND WARRANTIES

  Each party represents that the person executing this Agreement on its behalf is duly authorized to do so, and that this Agreement is and shall be during its term a binding obligation of the party on whose behalf it is executed. Each party represents to the other that the execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order or decree, contract or agreement to which it is now a party, or by which it is bound.

## V. TERM AND TERMINATION

5.1  The term of this Agreement shall be perpetual, unless terminated earlier in accordance with the terms set forth herein.

5.2  Assignee shall have the right at any time, at its sole option and upon written notice to Assignor, to terminate this Agreement.

## VI. MISCELLANEOUS

6.1  Relationship of Parties.  Assignor and Assignee acknowledge that they are independent entities.  It is not the intention of the parties to create a joint venture, partnership, business association or other form of business under this Agreement.

6.2  Entire Agreement.  This Agreement constitutes the entire understanding and agreement between Assignor and Assignee with regard to all matters herein set forth.  There are no other agreements, conditions, or representations, oral or written, express or implied, with regard thereto.  This Agreement may be only amended or modified in a written instrument signed by both parties.

6.3  Assignment and Delegation.  Assignor may not assign its rights or delegate its obligations under this Agreement without the prior written consent of Assignee.  Any assignment or delegation without such prior consent shall be invalid.  Assignee may at any time assign or license this Agreement and/or any of its rights or obligations hereunder without the prior written consent of Assignor.

6.4  Survival.  Articles 1, 3, 4, and 6 of this Agreement, and all assignments to Assignee of rights in Content including IP Rights, shall survive the termination of this Agreement.

6.5     Governing Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of California applicable to contracts performed entirely within such State, and without reference to the conflicts of law principles of such State.

6.6     Notices.  Notices shall be delivered to the addresses below (or such other address of which a party may from time to time give notice in writing). Notices shall be sufficiently given when hand-delivered or when the same shall be deposited so addressed, postage prepaid, in the United States mail and/or when the same shall have been transmitted by facsimile or email (unless the facsimile or email results in a failure of delivery notice), and the date of said delivery, mailing or transmission shall be the date of the giving of such notice.

> If to Assignor:   New Line Productions, Inc.
> c/o New Line Cinema LLC
> 116 North Robertson Blvd.
> Los Angeles, CA 90048
> Attention: Corporate Legal Department
>
> If to Assignee:   4000 Warner Boulevard
> Burbank, CA 91522
> Attention: Corporate Legal Department

6.7     Headings.  The title, caption or heading of any provision in this Agreement is used as a matter of convenience and shall not be used to interpret or construe the meaning of any provision.

6.8     Counterparts.  This Agreement may be executed in one or more counterparts, and by facsimile transmission, each copy of which shall be an original and all of which together shall constitute one and the same instrument, but this Agreement shall not be binding upon the parties until it has been signed by both parties. The parties hereto agree that telecopied signatures hereto shall be effective and enforceable.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

NEW LINE PRODUCTIONS, INC.

By: _____
Name: Edward A. Romano
Title: Vice President


WARNER BROS. ENTERTAINMENT INC.

By: _____
Name: John A. Rogovin
Title: Executive Vice President + General Counsel